**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**SS UNITED STATES PRESERVATION FOUNDATION, INC., and STEVEN R. PERRY,**

**Plaintiffs,**

**v.** **CASE NO. 3:26-cv-5339-MCR-HTC**

**UNITED STATES ARMY CORPS OF ENGINEERS, et al.**

**Defendants.**
_________________________________/

# ORDER

Plaintiffs have filed an amended motion for an emergency temporary restraining order ("TRO") and supplemental exhibit requesting the Court to prohibit the towing, deployment, and sinking of the *SS United States*. The Court denied Plaintiffs' initial TRO motion, in part because they failed to tender any amount as security for the requested injunction. *See* Fed. R. Civ. P. 65(c). Plaintiffs' amended motion renews their request for a waiver of the bond requirement. The renewed request is also denied.

Rule 65(c) serves to protect any party found to have been wrongfully enjoined by requiring security from the movant. Fed. R. Civ. P. 65(c). Although courts have the discretion to waive the security requirement, they should do so only in limited

circumstances. *See City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981)[1] (recognizing public-interest litigation that would benefit local government entities and protect citizens from adverse economic and social consequences as an exception to the Rule 65 security requirement). Courts have consistently recognized that security can be waived in circumstances where "complying with the preliminary injunction raises no risk of monetary loss to the defendant," *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1360 (N.D. Ga. 2022) (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010)), but that's not this case.

Plaintiffs continue to argue that the Court should exercise its discretion because of the nonprofit status of one plaintiff, the SS United States Preservation Foundation, Inc., and because the requested injunction serves the public interest by seeking to address potential environmental harms.[2] But Plaintiffs have not credibly

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting the case law of the former Fifth Circuit before October 1, 1981, as precedent in this Circuit).

[2] On the present record, the Court has serious questions concerning Plaintiffs' standing and their claim of public harm. Even considering the hearsay documents provided, the potential environmental harm identified is just that—a "potential" harm that Plaintiffs assert should be more fully considered by the Army Corps of Engineers. Assuming that may satisfy injury for purposes of standing to assert a procedural right, *see Center for a Sustainable Coast v. U.S. Army Corps of Eng'rs,* 100 F.4th 1349, 1357-58 (11th Cir. 2024), the Court still has concerns over whether it is enough to establish the actual and imminent harm required for a temporary restraining order on these facts let alone to show the type of public interest concern that would justify a waiver of Rule 65's bond requirement.

argued that complying with a restraining order would raise no risk of monetary loss to the Defendants, and the facts show otherwise.

Plaintiffs have provided the declaration of Carlos Camacho, Jr., the Foundation's co-founder, stating that the County has approved a budget increase of $944,000 in funding to cover dockage fees through December 31, 2026, and stating he does not know whether the dockage was prepaid through that date. Nevertheless, he believes that a brief pause "for a temporary restraining order will not result in any increase in these dockage fees." ECF No. 10-1. This is rank speculation and not a basis on which the Court can say there is no risk of monetary loss to the County. Approving a budget is a far cry from the actual expenditure of pre-paid funds.

According to the allegations in the Complaint, Okaloosa County plans to tow the *SS United States* from Mobile, Alabama, to Okaloosa County, Florida, on November 9, 2026, and "promptly" sink the vessel after its arrival, and so it's far from clear whether the County would have to pay the additional dockage costs through December 31 if the vessel leaves on November 9. On the other hand, should the Court issue a TRO and then perhaps a Preliminary Injunction, the taxpayers of Okaloosa County will no doubt incur that substantial expense and likely considerably more for storing, protecting, and maintaining the ship while litigation proceeds, and this is no small matter. Indeed, an order requiring the additional

agency action that Plaintiffs request could amount to a prolonged delay at exorbitant costs to the County and the taxpayers.[3]

Accordingly, the Court declines to waive the security requirement in this matter, and Plaintiffs' amended motion, ECF No. 10, is **DENIED** without prejudice. As previously ordered, any subsequent TRO must propose a bond amount sufficient to protect the county taxpayers (supported by a reasonable factual basis).

**DONE AND ORDERED** this 7th day of November 2026.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[3] While Plaintiffs assert that this requested temporary restraining order presents only a brief delay, they seek an order finding that the Corps failed to fully comply with the requirements of the National Environmental Policy Act and requiring the Corps to engage in additional testing and evaluation of the paint on the vessel. It's naïve to think that this process would impose only a brief delay, but even then, the expense of an additional ten days with a TRO in place would be a substantial taxpayer expense.